United States District Court
Southern District of Texas
**ENTERED**
November 19, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ASG Chemical Holdings, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-23-4333 |
| | § | |
| Bisley International, LLC, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 45. Pending before the court is Third-Party Defendants Ward and B4 Arrow Consulting, LLC's 12(b)(6) Motion to Dismiss Bisley's Amended Third-Party Complaint (ECF No. 36), ECF No. 41. The court recommends that the motion be **GRANTED** in part and **DENIED** in part.

### *1. Background and Procedural Posture*

ASG Chemical Holdings, LLC (ASG) filed suit against Bisley International, LLC (Bisley) alleging several causes of action including breach of contract, trademark infringement, unfair competition, and false advertising. ECF No. 40-1 at 1. In response, Bisley asserted counterclaims against ASG and filed a third-party complaint against John Ward and B4 Arrow Consulting, LLC (Ward and B4), among others. *See* ECF No. 36 at 19–20. Bisley alleges thirteen claims against Ward and B4 related to fraud, theft, misappropriation of trade secrets, and tortious interference with contractual relationships, among others. *See id.* at 38–65. Ward and B4 argue that Bisley has failed to allege facts that, if true, would demonstrate Ward and B4's liability, and they seek to

have Bisley's claims against them dismissed under Federal Rule of Civil Procedure 12(b)(6).[1] ECF No. 41 at 5.

Bisley alleges that Ward and his company, B4 Arrow Consulting, LLC, were part of a larger concerted effort to steal Bisley's inventory, destroy Bisley's cash flow, and otherwise harm Bisley's business. ECF No. 36 ¶¶ 130, 132, 280. Bisley alleges that Ward "was a double agent acting on behalf of and/or for the benefit of ASG, himself, and [his] co-conspirators, while simultaneously operating as an employee of Riteks." *Id.* ¶ 6. According to Bisley, Riteks was a Bisley customer.[2] *Id.* ¶ 84. Bisley also alleges that Ward and B4 worked with others in this scheme, including:

- Ken Pryde, the former Vice President of Bisley's Operations, who "was a double agent acting on behalf of and/or for the benefit of ASG, himself, and [his] co-conspirators," *id.* ¶ 5;
- ASG, which is an LLC that conducted business with Bisley, *id.* ¶¶ 2, 16; and
- Jeff Koebrick and Claudio Manissero, who are the owners and operators of ASG, *id.* ¶ 2.

Bisley alleges a conspiracy between ASG, Ward and B4, and the remaining third-party defendants (Koebrick, Manissero, and Pryde). Bisley states that "ASG and Third-Party Defendants agreed to: terminate the non-compete clause between ASG and Bisley to take Bisley's current and potential business; retain monies owed to Bisley; purchase chemicals that were then converted to ASG and/or the co-conspirators, either directly or

---

[1] The court advised the parties of Judge Lake's normal practice to "allow only one dispositive motion per party." ECF Nos. 68, 73. Ward and B4 provided the court with their intent to proceed with their motion to dismiss. ECF No. 70. Ward and B4 are therefore barred from later seeking summary judgment on any remaining third-party claims against them. ECF No. 68.

[2] ASG also alleges that "Riteks was one of ASG's key clients." ECF No. 40-1 ¶¶ 46–47.

indirectly; stole inventory; and sold inventory off the books." ECF No. 36 ¶ 279.

Bisley states that one part of the effort to harm Bisley included a plan to fraudulently request large orders of sodium aluminate from Bisley. *Id.* ¶ 160(k). Normally, when Bisley's customer, Riteks, needed sodium aluminate, Ward would issue a delivery request to Bisley. *Id.* ¶¶ 134–35. When Bisley received the request, Bisley would ship the inventory to the location that Ward requested for Riteks. *Id.* ¶ 136. Bisley would then issue an invoice to Riteks for payment. *Id.* ¶ 137. Bisley alleges that Ward deviated from that normal practice as part of his conspiracy against Bisley.

Bisley alleges that "B4 Arrow Consulting and Ward, along with the other Third-Party Defendants, conspired and issued fraudulent requests for the delivery of sodium aluminate, purportedly on behalf of Riteks, which resulted in Bisley shipping sodium aluminate and never receiving payment." ECF No. 36 ¶ 160(k). Specifically, "[o]n seven separate occasions, Bisley shipped 40,000 lbs of sodium aluminate to Riteks, at Riteks' request, but the shipments never arrived." *Id.* ¶ 138. Bisley alleges that "[u]pon information and belief, the shipments were re-routed, by Ward and/or B4 Arrow Consulting, and delivered to an undisclosed location. Neither Riteks nor Bisley requested that the carrier re-route any of the seven shipments." *Id.* ¶ 139.

Bisley also claims that Ward and B4 entered an agreement with Pryde and ASG to fraudulently inflate commissions paid by Bisley to Ward and B4. ECF No. 36 ¶¶ 187, 190. "Specifically, the price payable to Riteks was increased to account for commissions payable to B4 Arrow Consulting and/or John Ward." *Id.*

Bisley also alleges that Ward and B4 used Bisley's trade secrets to take Bisley's current and future potential customers. *Id.* ¶ 240. Bisley alleges that its customer information, the probability of its shipments, the prices it charges, revenue information, and

the amount it pays its carriers are all trade secrets that Pryde shared with Ward and B4. ECF No. 36 ¶¶ 234–39, 253, 257. Bisley states that Ward and B4 "now use Bisley's trade secrets and proprietary information in competition with Bisley to divert and steal, among other things, Bisley's current customers and future customers via Bisley leads." *Id.* ¶ 240.

Bisley claims that it reasonably protects its confidential and trade secret information, in part, by: "requiring all employees to maintain [] confidentiality . . .; restricting employee access to proprietary and trade secret information . . .; and enforcing disciplinary action against employees for improper use or disclosure of proprietary and trade secret information." ECF No. 36 ¶¶ 254, 260.

### 2. Rule 12(b)(6) Motion to Dismiss Standard

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, the court is constrained to the "four corners of the complaint" to determine whether the plaintiff has stated a claim. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011); *see also Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698, 708 (S.D. Tex. 2002) ("[T]he court may not look beyond the four corners of the plaintiff's pleadings.").

"The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," and "drawing all reasonable inferences in that party's favor." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). The pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014); *see Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory.").

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### 3. Analysis

#### A. Fraud Claims: Counts I and II

Special pleading rules apply to claims of fraud. Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.*; *see Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not.").

Generally, courts have required the pleading to lay out "the who, what, when, where, and how" of the alleged fraud to comply with Rule 9(b). *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003). Rule 9(b)'s application is context-specific, however, and "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). Where the facts are particularly within the perpetrator's knowledge, the pleading requirements are held to a lower standard. *See United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003).

#### i. Fraud: Count I

In Texas, the elements of fraud are:

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).

Ward and B4 argue that Bisley has not met its heightened burden under Rule 9(b) and that Bisley has not alleged any "representation" at all by Ward or B4. ECF No. 41 at 5. The court disagrees.

According to Bisley, when Riteks needed sodium aluminate in the normal course of business, Ward would issue a delivery request to Bisley on behalf of Riteks. ECF No. 36 ¶¶ 134–35. When Bisley received the request, Bisley would ship the inventory "to the location specified by Riteks through Ward." *Id.* ¶ 136. Then, Bisley would issue an invoice to Riteks for payment. *Id.* ¶ 137.

Bisley alleges that "B4 Arrow Consulting and Ward, along with the other Third-Party Defendants, conspired and issued fraudulent requests for the delivery of sodium aluminate, purportedly on behalf of Riteks, which resulted in Bisley shipping sodium aluminate and never receiving payment." ECF No 36 ¶ 160(k). Specifically, "[o]n seven separate occasions, Bisley shipped 40,000 lbs of sodium aluminate to Riteks, at Riteks' request, but the shipments never arrived." *Id.* ¶ 138. Bisley alleges that "[u]pon information and belief, the shipments were re-routed, by Ward and/or B4 Arrow Consulting, and delivered to an

undisclosed location. Neither Riteks nor Bisley requested that the carrier re-route any of the seven shipments." *Id.* ¶ 139.

The "statements" at issue here are fraudulent orders for sodium aluminate. The allegations include who made the fraudulent orders, what the orders were for, and how the defendants engaged in fraud. Although Bisley does not state the specific dates those orders were placed or shipped, Bisley has stated with particularity the circumstances constituting fraud—that is, Ward, B4, and other third-party defendants placed seven large, false orders with Bisley that never arrived to the customer. Much of the information that Bisley does not allege in its complaint is information that is in Ward or B4's control, such as whether Riteks requested the orders of sodium aluminate, where Riteks asked for the orders to be shipped, and how Ward allegedly re-routed the shipment.

A party may meet the Rule 9(b) standard "without including all the details of any single court-articulated standard." *Grubbs*, 565 F.3d at 188. Here, Bisley alleged the circumstances of its fraud claims sufficient to survive Ward and B4's motion to dismiss. Ward and B4's motion to dismiss Bisley's fraud claim should be denied.

### ii. Fraudulent Inducement: Count II

Texas law imposes "a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Fraudulent inducement is a type of common law fraud that requires all the same basic elements of fraud and is actionable when the fraudulent misrepresentation "is a false promise of future performance made with a present intent not to perform." *Id.* Fraudulent inducement only arises in the context of an agreement, so "with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001).

Ward and B4 argue that they "cannot be held liable for fraudulently inducing a contract to which they were not a party." ECF No. 41 at 8. Ward and B4 argue that they were not a party to the 2022 agreement between Bisley and ASG and that that they were not parties to any agreement with Bisley about their commission. *Id.*

Bisley agrees that Ward was not a party to the 2022 agreement. ECF No. 48 at 8. Bisley argues that its fraudulent inducement claim against Ward and B4 is based on "the *multiple* sales agreements Ward fraudulently induced Bisley to execute, including the sodium aluminate scheme." *Id.* 8–9. As discussed above, Bisley alleges that Ward was part of a scheme to harm Bisley. If Bisley's allegations are true, Ward induced Bisley to send seven large shipments of sodium aluminate as part of that scheme. ECF No. 36 ¶¶ 132–41. That is, Ward's fraudulent requests were not on behalf of Riteks, they were on behalf of Ward himself and his alleged co-conspirators. Any agreement requiring Bisley to send the seven orders of sodium aluminate would have been between Ward and Bisley. Bisley has met its burden at this stage in the proceedings. Accordingly, Ward and B4's motion should be denied on Bisley's fraudulent inducement claim.

### B. Theft: Count IV

The Texas Theft Liability Act (TTLA) creates a civil cause of action against a person who commits theft under the Texas Penal Code. Tex. Civ. Prac. & Rem. Code §§ 134.002–.005. Bisley alleges (1) theft of property in violation of § 31.03 of the Texas Penal Code and (2) theft of services in violation of § 31.04 of the Texas Penal Code. ECF No. 36 ¶ 205–06. The court considers each in turn.

The Texas Penal Code provides that a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code § 31.03(a). Ward and B4 argue that "Bisley offers no specific or plausible allegations of what

happened to these products." ECF No. 41 at 9–10. Bisley alleges that "ASG and Third-Party Defendants worked together to steal the products purchased by Bisley through numerous different schemes." ECF No. 36 ¶ 213.

One theft scheme that Bisley alleges is Ward and B4's involvement in requesting seven fraudulent orders of sodium aluminate, discussed above. If Bisley's allegations are true, Ward and B4 placed false orders for large amounts of sodium aluminate and re-routed the shipments so they would not arrive to the customer. *See* ECF No. 36 ¶ 160(k). That is, based on Bisley's allegations, it is at least plausible that Ward and B4, along with others, fraudulently (i.e., without Bisley's effective consent) appropriated sodium aluminate with intent to deprive Bisley of the property. Bisley thus states a plausible claim for theft of property and Ward and B4's motion should be denied on this claim.

The Texas Penal Code also provides that a person commits theft of services if:

> with intent to avoid payment for service that the actor knows is provided only for compensation:
>
> > (1) the actor intentionally or knowingly secures performance of the service by deception, threat, or false token; [or]
> >
> > (2) having control over the disposition of services of another to which the actor is not entitled, the actor intentionally or knowingly diverts the other's services to the actor's own benefit or to the benefit of another not entitled to the services[.]

Tex. Penal Code § 31.04(a).

Based on Bisley's amended pleadings, Ward and B4 argue that they "still do not know what services they supposedly stole or how they supposedly stole them." ECF No. 41 at 10. But Bisley alleges that, via the sodium aluminate scheme detailed above, Ward and B4 received Bisley's services of shipping the sodium

aluminate through deception. ECF No. 36 ¶ 138. Thus, Bisley has adequately pleaded its claim for theft of services and Ward and B4's motion to dismiss should be denied on this claim.

### C. Conversion: Count VII

Conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights[.]" *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). To establish conversion, a plaintiff must show that:

> (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365–66 (Tex. App.—Dallas 2009, pet. denied).

Ward and B4 argue that "Bisley does not plausibly allege that Ward did anything improper with respect to [the sodium aluminate] shipments, when the shipments/conversion supposedly occurred, how the conversion occurred, or any details beyond the fact that Bisley thinks it is missing inventory and is guessing at the cause." ECF No. 41 at 10–11.

As discussed above, if Bisley's allegations are true, Ward and B4 placed false orders for large amounts of sodium aluminate and re-routed the shipments so they would not arrive to the customer. ECF No. 36 ¶¶ 132–41. That is, Bisley alleges that Ward and B4, along with others, exercised control over the sodium aluminate shipments inconsistent with Bisley's rights. Bisley states a

plausible claim for conversion and Ward and B4's motion should be denied on this claim.

### D. Trade Secret Claims: Counts V and VI

#### i.    Trade Secret Misappropriation: Count V

To make a claim for misappropriation under the Texas Uniform Trade Secrets Act (TUTSA), a plaintiff must show that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or was discovered by improper means, (3) the defendant used the trade secret without the plaintiff's authorization, and (4) the plaintiff suffered damages as a result." *Malone v. PLH Group, Inc.*, No. 01-19-00016-CV, 2020 WL 1680058, at *5 (Tex. App.—Houston [1st Dist.] Apr. 7, 2020, pet. denied); *see also* Tex. Civ. Prac. & Rem. Code § 134A. "Discovery by 'improper means' includes 'theft, fraud, unauthorized interception of communications, inducement of or knowing participation in a breach of confidence, and other means either wrongful in themselves or wrongful under the circumstances of the case.'" *Hoover Panel Sys., Inc. v. HAT Contract, Inc.*, 819 F. App'x. 190, 198 (5th Cir. 2020).

Ward and B4 argue that Bisley has not alleged "which supposed secret or secrets the Ward Parties misappropriated." ECF No. 41 at 11. Ward and B4 also argue that Bisley did not allege that Ward or B4 used the secrets. *Id.* Bisley alleges that its customer information, the probability of its shipments, the prices it charges, and the amount it pays its carriers are all trade secrets that Pryde shared with Ward and B4. ECF No. 36 ¶¶ 234–39. Bisley further alleges that Ward and B4 "now use Bisley's trade secrets and proprietary information in competition with Bisley to divert and steal, among other things, Bisley's current customers and future customers via Bisley leads." *Id.* ¶ 240. Ward and B4's arguments are without merit.

Ward and B4 also argue that Bisley did not allege when or how Pryde shared the secrets or how Ward or B4 engaged in any "improper means." ECF No. 41 at 11. Bisley need not allege the specifics about how Ward and B4 learned the alleged secrets. Bisley's burden is to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Even so, Bisley alleges that Ward and B4, along with ASG, Koebrick, Manissero, and Pryde, are part of various schemes to steal Bisley's inventory, destroy Bisley's cash flow, and otherwise harm Bisley's business. ECF No. 36 ¶¶ 130, 132, 280. It is plausible that learning Bisley's customer list and prices as part of a larger effort to harm Bisley is "wrongful under the circumstances of the case." *See Hoover Panel Sys.*, 819 F. App'x. at 198. Bisley's motion to dismiss should be denied on this claim.

### ii. Violation of DTSA: Count VI

The federal Defend Trade Secrets Act (DTSA) and TUTSA are both based on the Uniform Trade Secrets Act, and the elements under each are similar but not identical. *See DBG Grp. Invs., LLC v. Puradigm, LLC*, Civil Action No. 3:21-CV-678-S, 2022 WL 313435, at *2 (N.D. Tex. Feb. 2, 2022). To allege a claim under the DTSA, the plaintiff must show that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022).

First, Ward and B4 argue that Bisley's DTSA claim fails because Bisley does not "identify specific trade secret information it claims has been misappropriated." ECF No. 41 at 12 (quoting *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. CIV.A. H-11-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012)). Ward and B4's argument is not persuasive. The court in *Clearline* did not define

a cause of action under the DTSA. *Clearline Techs. Ltd.*, 2012 WL 43366, at *11. Rather, the cause of action in that case was the Illinois Trade Secret Act. *Id.* Also, the allegations of misappropriation in that case included that the defendant used "technical and financial information," and that the parties entered a Proprietary Information Agreement. *Id.* The court dismissed the claim and held that it "will not infer that trade secrets exist merely from the existence of a proprietary information agreement." *Id.*

Here, Bisley's allegations are clear. Bisley alleges that Ward and B4 used Bisley's "recent customer list and contact information, load counts, revenue information, and pricing and profit numbers." ECF No. 36 ¶¶ 253, 257. Bisley states that "[t]hese documents and information are unique to Bisley and are not commonly known or available to the public." *Id.* ¶ 253.

Ward and B4 also argue that Bisley failed to allege that the trade secret was not generally known or readily ascertainable by proper means. ECF No. 41 at 12–13. Courts have "routinely dismiss[ed] trade secret claims where the allegations of the complaint fail to separate the alleged trade secret from public knowledge and, therefore, do not establish that the alleged trade secret was 'not generally known' or 'readily ascertainable by proper means.'" *See Pie Development, LLC v. Pie Insurance Holdings, Inc.*, 2021 WL 3206043 (S.D. Miss. July 21, 2021), *aff'd*, No. 21-60593, 2023 WL 2707184 (5th Cir. Mar. 30, 2023). Bisley's allegations state that:

> Bisley takes reasonable steps to protect the secrecy of its confidential, proprietary, and trade secret information. Bisley's reasonable steps include but are not limited to: requiring all employees to maintain the confidentiality of proprietary and trade secret business information; restricting employee access to proprietary and trade secret information to employees with a legitimate business need to know such

information; and enforcing disciplinary action against employees for improper use or disclosure of proprietary and trade secret information.

ECF No. 36 ¶¶ 254, 260 ("information misappropriated by ASG and Third-Party Defendants derives independent economic value from not being known within the industry to Bisley's competitors"). Thus, Ward and B4's argument fails here.

Ward and B4 also argue that "Bisley does not offer any explanation of how the Ward Parties supposedly 'disclosed or used' any of Bisley's alleged trade secrets." ECF No. 41 at 13. Bisley alleges that "ASG and Third-Party Defendants disclosed and used Bisley's recent customer list and contact information, load counts, revenue information, and pricing and profit numbers and other trade secret and proprietary information for the unlawful economic benefit of ASG[.]" ECF No. 36 ¶ 257. Bisley also alleges that Ward and B4 "use Bisley's trade secrets and proprietary information in competition with Bisley to divert and steal, among other things, Bisley's current customers and future customers via Bisley leads." *Id.* ¶ 233–42. Bisley has met its burden and Ward and B4's motion to dismiss Bisley's DTPA claim should be denied.

### iii. *TUTSA Preemption*

TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a). TUTSA preemption prevents inconsistent theories of relief for the same underlying harm by displacing alternative common law theories of recovery that are based on trade secret misappropriation. *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.). Trade secrets are defined broadly and include:

all forms and types of information, including business [information], . . . or list[s] of actual or potential

customers or suppliers, whether tangible or intangible
. . . if:

> (A) the owner of the trade secret has taken
> reasonable measures under the circumstances to
> keep the information secret; and

> (B) the information derives independent economic
> value, actual or potential, from not being generally
> known to, and not being readily ascertainable
> through proper means by, another person who can
> obtain economic value from the disclosure or use of
> the information.

*Id.* § 134A.002(6). Whether a trade secret exists "is properly
considered a question of fact to be decided by the judge or jury as
fact-finder." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th
Cir. 2004).

Federal district courts in Texas are not in agreement about
how to apply TUTSA's preemption provision. *See, e.g., DHI Group,
Inc. v. Kent*, 397 F. Supp. 3d 904, 922 (S.D. Tex. 2019) (comparing
*Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 1:17-cv-444-
RP, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018) (finding that
TUTSA's preemption extends to "all claims based on the alleged
improper taking of confidential business information") with *AMID,
Inc. v. Medic Alert Found. United States, Inc.*, 241 F.Supp.3d
788, 827 (S.D. Tex. 2017) (allowing the plaintiff to allege
misappropriation of information in the alternative under TUTSA
as trade secrets and under common law as confidential)); *see also
Topstone Communications, Inc. v. Xu*, No. 4:22-CV-00048, 2024
WL 1517637, at *6 (S.D. Tex. Apr. 8, 2024) ("TUTSA's preemption
provision is best read to preempt only those claims that allege
misappropriation of trade secrets.").

Despite the widespread disagreement on certain aspects of
TUTSA preemption, "[m]ost district courts in Texas hold that if a
plaintiff's tort claim is premised on the same factual allegations as

its claim for trade secret misappropriation, the claim is preempted by TUTSA." *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, Civil Action No. H-19-2953, 2020 WL 6748049, at *13 (S.D. Tex. Nov. 17, 2020); *see also Embarcadero Techs., Inc.*, 2018 WL 315753, at *3 (stating that "allow[ing] multiple theories of relief for [the] same underlying harm would be to read the preemption provision too narrowly"); *Amid, Inc.*, 241 F.Supp.3d at 826 (stating that the focus of the preemption analysis is "on whether the facts relied on to support the unfair-competition claim differ from those supporting the TUTSA claim"); *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, CAUSE NO.: A-14-CA-00847-SS, 2016 WL 900577, at *8 (W.D. Tex. Mar. 2, 2016) (stating that a claim for conversion "based on the same facts as those underlying [a] claim for misappropriation of trade secrets" was wholly preempted).

The undersigned has previously considered this issue on multiple occasions. *See EthosEnergy Field Services, LLC v. Axis Mech. Group, Inc.*, No. CV H-21-3954, 2022 WL 2707734 (S.D. Tex. June 10, 2022), *R&R adopted*, No. CV H-21-3954, 2022 WL 2704853 (S.D. Tex. July 11, 2022); *see also Stress Eng'g Services, Inc. v. Olson*, No. CV H-21-3210, 2022 WL 4086574 (S.D. Tex. Aug. 4, 2022), *R&R adopted*, No. CV H-21-3210, 2022 WL 4084433 (S.D. Tex. Sept. 6, 2022). Here, as before, the court relies on the common thread among district courts. That is, common law claims are preempted when they are based on the same facts as a TUTSA claim.

Ward and B4 argue that *portions* of Bisley's claims are preempted by TUTSA because they depend on facts that Bisley relies on as trade secrets in its TUTSA claims. ECF No. 41 at 23. Bisley identifies its "customer and supplier lists, financial data, including the cost, revenue, and the probability of Bisley's shipments" as well as its customer information, prices it charges,

and the amount it pays its carriers as trade secrets. ECF No. 36 ¶¶ 233–35.

None of Bisley's claims, aside from those under TUTSA and the DTSA, rely wholly on alleged trade secrets. Accordingly, to the extent that Bisley's tort claims are based on misappropriation of that which Bisley defines as its trade secrets, those theories of recovery should be dismissed. This ruling would not dismiss any claim in its entirety.

### E. Civil Conspiracy: Count VIII

The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)).

Ward and B4 argue that Bisley fails to allege the third, fourth, and fifth elements. ECF No. 41 at 20. Bisley alleges that "ASG and Third-Party Defendants agreed to: terminate the non-compete clause between ASG and Bisley to take Bisley's current and potential business; retain monies owed to Bisley; purchase chemicals that were then converted to ASG and/or the co-conspirators, either directly or indirectly; stole inventory; and sold inventory off the books." ECF No. 36 ¶ 279. Bisley also alleges that, as part of the alleged conspiracy, Ward and B4 were part of a scheme to fraudulently request seven orders of sodium aluminate that never arrived to the customer. *Id.* ¶¶ 138–39, 160(k). Considering all of Bisley's allegations, Bisley has plausibly alleged each element of a conspiracy. That is, Ward and B4 were part of a meeting of the minds with ASG, Pryde, Koebrick, and Manissero; Ward and B4 performed overt acts in furtherance of the

agreement, such as fraudulently ordering sodium aluminate; and Bisley was injured by the conspiracy.

Ward and B4's comparison to *Twombly* is not instructive here. The court has already found that Bisley plausibly alleged fraud, theft, and conversion as part of the scheme to harm Bisley, which is more than "rational and competitive business strategy[.]" *Twombly*, 550 U.S. at 566. Thus, Bisley's conspiracy claim survives and Ward and B4's motion should be denied for this claim.

### F. Good Faith and Fair Dealing: Count XII

"Texas law does not impose a generalized contractual duty of good faith and fair dealing and, in fact, rejects it in almost all circumstances." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016). A duty of good faith and fair dealing arises if the parties are (1) in a formal fiduciary relationship or (2) "in a special or confidential relationship." *Id.* A "special relationship" is "earmarked by specific characteristics including: long standing relations, an imbalance of bargaining power, and significant trust and confidence shared by the parties." *Id.* Texas courts have restricted "special relationships" to narrow situations between an insurer and an insured and have declined to extend the relationship to other situations including employer-employee, lender-borrower, and supplier-distributor. *Id.* at 781–82 (citing cases).

Bisley does not allege a formal fiduciary relationship nor a special relationship with Ward or B4. Bisley alleges that "Ward was a double agent acting on behalf of and/or for the benefit of ASG, himself, and [his] co-conspirators, while simultaneously operating as an employee of Riteks." ECF No. 36 ¶ 6. Bisley also alleges that Ward approved "inflated" commission prices "in his capacity as a Sales Director for Riteks," *id.* ¶ 328, and that the commissions arrangement "appears to have been separately agreed between Pryde, ASG, and Ward. Relevantly, these

commissions were paid to B4 Arrow Consulting by ASG, rather than directly from Bisley." *Id.* ¶ 329.

Ward and B4 state that "Ward was an independent contractor/consultant engaged to locate potential customers for Bisley/ASG[.]" ECF No. 41 at 13 n.4.

Bisley has not alleged a formal fiduciary relationship, and the allegations do not show that Ward and Bisley had a long-standing relationship, an imbalance of bargaining power, nor that the parties shared significant trust. Accordingly, Bisley has not shown that it is plausibly entitled to relief, and Ward and B4's motion to dismiss should be granted on the breach of good faith and fair dealing claim.

### G. Aiding and Abetting Breach of Fiduciary Duty: Count XIV

Ward and B4 argue that Texas does not recognize claims for aiding and abetting breach of fiduciary duty. ECF No. 41 at 18. The Supreme Court of Texas recently stated that it "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017).

Bisley cites to a case from the Southern District of Texas that analyzes a claim for aiding and abetting breach of fiduciary duty on a motion for summary judgment. ECF No. 48 at 20–21 (citing *PrevMED, Inc. v. MNM-1997, Inc.*, No. CV H-15-2856, 2017 WL 785656, at *12 (S.D. Tex. Feb. 28, 2017)). In that case, similar to *First United Pentecostal Church of Beaumont*, it does not appear that the parties argued that the cause of action did not exist. *PrevMED, Inc.*, 2017 WL 785656, at *11–12; *see also First United Pentecostal Church of Beaumont*, 514 S.W.3d at 224 ("the parties do not raise or brief the question of whether such a cause of action exists in Texas, so we will assume, without deciding, that it does."). The court ultimately granted a motion for summary judgment on

the claim for aiding and abetting breach of fiduciary duty. *PrevMED, Inc.,* 2017 WL 785656, at \*11–12

Texas appellate courts have not conclusively decided whether a claim for aiding and abetting exists. In 2011, the Dallas Court of Appeals recognized an aiding and abetting breach of fiduciary duty claim. *Darocy v. Abildtrup*, 345 S.W.3d 129, 137–38 (Tex. App.—Dallas 2011, no pet.). In analyzing this claim, the court stated that "[w]hen a defendant knowingly participates in the breach of a fiduciary duty, he becomes a joint tortfeasor and is liable as such." *Id.* at 137.

But in 2020, the San Antonio Court of Appeals separated a claim for "knowing participation in breach of fiduciary duty" from a claim of "aiding and abetting a breach of fiduciary duty." *Straehla v. AL Glob. Services, LLC*, 619 S.W.3d 795, 803–04 (Tex. App.—San Antonio 2020, pet. denied). There, the court stated that the parties "do not dispute that knowing participation is a viable cause of action under Texas law. We, therefore, consider [Plaintiff's] claims to be for knowing participation in breach of fiduciary duty, and we do not separately consider aiding-and-abetting claims. We offer no opinion on whether an aiding-and-abetting cause of action is viable under Texas law." *Id.* at 803 n.3. Similarly, the Corpus Christi–Edinburg Court of Appeals noted that "when a breach of fiduciary duty claim fails, so should an aiding and abetting in the breach of fiduciary duty claim, *to the extent one exists in Texas.*" *Super Starr Int'l, LLC*, 531 S.W.3d at 847 (emphasis added).

The Fifth Circuit held in 2018 that a party was not entitled to relief on an aiding and abetting claim and the defendant was entitled to judgment as a matter of law "because no such claim exists in Texas." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 782 (5th Cir. 2018). There, the court held that "a federal court exceeds the bounds of

20

its legitimacy in fashioning novel causes of action not yet recognized by the state courts." *Id.* at 781. When the district court recognized a cause of action for aiding and abetting, "despite ample warning, the district court exceeded its circumscribed institutional role and 'expanded Texas law beyond its presently existing boundary.'" *Id.*

Because the Supreme Court of Texas has not ruled on this issue and because the Fifth Circuit held that aiding and abetting claims do not exist in Texas, Bisley has not shown that it is entitled to relief on this claim. As such, Ward and B4's motion to dismiss should be granted on the aiding and abetting breach of fiduciary duty claim.

### H. Tortious Interference Claims: Counts XV and XVI

#### i. Tortious Interference with Existing Contracts: Count XV

The elements for tortious interference with an existing contract are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Ward and B4 argue that Bisley has not alleged the second or third elements of its claim. The court disagrees.

Bisley alleges that, as part of a larger scheme to harm Bisley, Ward and B4 "increased sales prices causing Bisley to pay inflated commission rates that exceeded the rates agreed to in the Agreements" and "conspired to destroy Bisley's cash flow by ordering mass amounts of sodium aluminate on 'consignment' for Riteks." ECF No. 36 ¶¶ 349–50. Bisley's allegations state that Bisley had to "pay inflated commission rates" due to Third-Party Defendants' actions. *Id.* ¶ 349. As such, Bisley has plausibly stated

a claim to relief and Ward and B4's motion should be denied for Bisley's tortious interference with existing contracts claim.

### ii. Tortious Interference with Prospective Contracts: Count XVI

The elements for tortious interference with prospective contracts require:

> (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*Faucette v. Chantos*, 322 S.W.3d 901, 914 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Ward and B4 argue that Bisley failed to allege "the elements of this cause of action for any of these potential customers[.]" ECF No. 41 at 15. But Bisley has met its burden. For example, Bisley alleges that, after a potential customer contacted Bisley through its website, Bisley sent that potential customer a sample of its product. ECF No. 36 ¶ 52. Then, Ward, with others, excluded Bisley from further conversations with the customer and negotiated a sale by ASG, "bypassing and stealing business from Bisley." *Id.* ¶¶ 49–57. This plausibly states that Ward, as part of a larger scheme against Bisley, unlawfully acted to prevent Bisley from engaging in conversations with a potential customer. Bisley has alleged each element of a claim for tortious interference with a prospective contract, and Ward and B4's motion should be denied on this claim.

### I. Business Disparagement: Count XVII

Business disparagement is actionable when there is "publication of a disparaging statement concerning the product [or services] of another" and "(1) the statement is false, (2) published with malice, (3) with the intent that the publication cause pecuniary loss or the reasonable recognition that it will, and (4) pecuniary loss does in fact result." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020).

Ward and B4 argue that Bisley merely recites the elements of business disparagement and does not allege any false statements sufficient to plead a claim. ECF No. 41 at 16. Indeed, Bisley states that "ASG and Third-Party Defendants have made disparaging oral statements about Bisley's business to many vendors and customers" knowing that these statements would likely result in inducing others not to deal with Bisley. ECF No. 36 ¶¶ 361–62. Bisley also alleges that Ward and B4 were part of a concerted effort to direct potential business away from Bisley. *Id.* ¶ 83.

Bisley also alleges that "[i]n May 2022, Pryde informed Bisley that Eastern Wholesale Fence, LLC ("Eastern Fence"), a major Bisley account, would no longer be a customer of Bisley's due to its financial difficulties." *Id.* ¶ 88. Ward and B4 argue that this is not sufficient to allege that Ward made any disparaging statements about Bisley at all. ECF No. 41 at 16–17. The court agrees. Because Bisley has not alleged that Ward or B4 made untrue statements about Bisley with the intent to cause Bisley pecuniary loss, Ward and B4's motion should be granted for Bisley's business disparagement claim.

### J. Unjust Enrichment: Count XVIII

Unjust enrichment occurs when someone secures a benefit wrongfully or passively receives a benefit that would be unconscionable to retain. *Eun Bok Lee v. Ho Chang Lee*, 411

S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). To successfully assert a claim for unjust enrichment, a party must allege that "one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Ward and B4 argue that Bisley's unjust enrichment claim fails because Bisley has not plausibly alleged (1) how third-party defendants "obtained a benefit" from their acts or (2) that Ward or B4 committed any acts constituting fraud, duress, or taking undue advantage. ECF No. 41 at 17. Ward and B4 also argue that two of Bisley's theories to support its claim for unjust enrichment fail because they are restated breach of contract claims. *Id.*

As the court explained above, Bisley alleges that Ward and B4 earned inflated commissions for some sales to Riteks. ECF No. 36 ¶ 326. These commissions, Bisley alleges, were part of a larger scheme to harm Bisley. *Id.* ¶¶ 349–50. These allegations plausibly state that Ward and B4 *obtained a benefit* by *taking advantage of Bisley* and as part of a larger scheme to harm Bisley. At this stage in the proceedings, the court cannot say that this is a restated breach of contract claim. Ward and B4's motion should be denied for Bisley's unjust enrichment claim.

### K. Request for Injunctive Relief

Bisley requests injunctive relief against ASG and Third-Party Defendants. ECF No. 36 ¶¶ 460–66. Ward and B4 argue that the court should dismiss this request for relief because Bisley has not plausibly alleged a likelihood of success on the merits of any of its claims. ECF No. 41 at 23–24. Because the court found otherwise above, Ward and B4's motion to dismiss Bisley's claim for injunctive relief should be denied.

### L. Leave to Amend

The parties engaged in significant briefing on this motion to dismiss. Yet, in the last sentence of its response, Bisley states, "[i]n

the event the Court finds Bisley's Third-Party Complaint deficient, Bisley requests permission to amend." ECF No. 48 at 25.

"Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). A party seeking leave to amend "must give the court at least some notice of what . . . [his] amendments would be and how those amendments would cure the initial complaint's defects." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (citation omitted). The court may deny leave "[i]f the plaintiff does not provide a copy of the amended complaint [or] explain how the defects could be cured." *Id.* (citation omitted).

Here, Bisley has amended its third-party complaint once before, it has not provided a copy of its newest proposed amended third-party complaint, and it has not explained how any defects in its pleading might be cured. Bisley has not stated any arguments or provided any legal support for its cursory request. Thus, to the extent that Bisley asks for leave to amend, that motion should be denied.

### *4. Conclusion*

For the foregoing reasons, the court recommends that Ward and B4's Motion to Dismiss, ECF No. 41, be **GRANTED** in part and **DENIED** in part.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on November 18, 2024.

Peter Bray
United States Magistrate Judge