Case 4:23-cv-04333   Document 100   Filed on 11/19/24 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
November 20, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASG Chemical Holdings, LLC, *Plaintiff*, | § § § | |
| v. | § § | Civil Action H-23-4333 |
| Bisley International, LLC, *Defendant*. | § § § § | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 45. Pending before the court is Third-Party Defendants Claudio Manissero and Jeff Koebrick's Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 51. The court recommends that the motion be **DENIED**.

### *1. Background and Procedural Posture*

This suit stems from a business relationship between ASG Chemical Holdings, LLC (ASG) and Bisley International, LLC (Bisley) that "deteriorated beyond the point of no return." ECF No. 51 at 2; *see also* ECF No. 62 at 2. ASG filed suit against Bisley alleging several causes of action including breach of contract, trademark infringement, unfair competition, and false advertising. ECF No. 40-1 at 1. In response, Bisley asserted counterclaims against ASG and filed a third-party complaint against Manissero and Koebrick, among others. *See* ECF No. 36. Bisley alleges fourteen claims against Manissero and Koebrick related to fraud, theft, tortious interference with business relationships, conspiracy, and violations of statutes protecting trade secrets, among others. *See id.* Manissero and Koebrick now argue that the court lacks personal jurisdiction over them, and

they seek to have Bisley's claims against them dismissed under Federal Rule of Civil Procedure 12(b)(2).[1] ECF No. 51 at 1.

Manissero and Koebrick are "the two member-managers of ASG." ECF No. 51 at 2–3. They are both domiciled in Florida, and "[v]irtually all of Koebrick and Manissero's work for ASG is done out of their homes and offices in Florida." *Id.* at 3.

"Bisley International, LLC's parent company is based in Sydney, Australia, [but] Bisley International is a Texas-based company[.]" ECF No. 62 at 2. Bisley "is a limited liability company organized and existing under the laws of Texas." ECF No. 36 ¶ 1.

Bisley alleges that, after the relationship between ASG and Bisley deteriorated, Manissero and Koebrick acted tortiously as part of a larger conspiracy to harm Bisley. Broadly, Bisley claims that, as part of this scheme, Manissero and Koebrick made false, harmful statements to Bisley about Bisley's business, decreased Bisley's business by steering clients away from Bisley, falsely increased prices to receive inflated commissions from Bisley, and placed false orders from Bisley. ECF No. 36 ¶¶ 159–60.

According to Bisley, while in Houston, Texas, Manissero and Koebrick intentionally asked the operators of GTS, Bisley's Houston-based warehouse, to accept an improper fee arrangement that would harm Bisley. ECF No. 36 ¶¶ 145–48. Bisley also alleges that Manissero and Koebrick told the operators of GTS that "ASG paid Bisley employees 'off the books,'" in an effort to harm Bisley's reputation. *Id.* ¶ 145.

Bisley also alleges that Manissero and Koebrick were part of a scheme to request several large, false orders from Bisley. ECF

---

[1] Manissero and Koebrick "respectfully seek the Court's leave to consider this motion to dismiss under Fed. R. Civ. P. 12(b)(2) without having this count toward this Court's limit on one dispositive motion." ECF No. 51 at 1. Since this is a jurisdictional matter and not a ruling on the merits, this motion does not count toward the one-motion limit.

No. 36 ¶¶ 132–41. Manissero and Koebrick, along with others, allegedly requested fraudulent orders of sodium aluminate on behalf of Bisley's customer Riteks on several occasions. *Id.* ¶¶ 160(k), 138. Bisley alleges that its shipments never arrived to its customer and Bisley never received payment for the order. *Id.* Additionally, according to Bisley, Manissero and Koebrick manipulated the prices of products to wrongfully receive additional money from Bisley and "drain Bisley's cash-flow." *Id.* ¶ 160(j). Similarly, Manissero and Koebrick on multiple occasions paid for products above market value then sold those products below market value to receive an inflated commission from Bisley and cause Bisley to have a negative cash-flow. *Id.* ¶¶ 160(l), 184–86. Manissero and Koebrick also allegedly improperly compensated Bisley employees and intentionally over-ordered products from Bisley to fill Bisley's warehouse with products that "had no place to go." *Id.* ¶ 160(o)–(p).

Bisley also alleges that Manissero and Koebrick wrongfully redirected Bisley's business from new and existing customers to ASG. ECF No. 36 ¶ 160(e).

### 2. *Legal Standards*

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to make a prima facie showing that the court has jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). The court may rely on affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery to determine whether it can assert jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes its prima facie case, the burden

3

then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Jurisdictional requirements "must be met as to each defendant[.]" *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). A federal court has jurisdiction over a nonresident defendant if: (1) the state's long-arm statute confers personal jurisdiction over that defendant, and (2) the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ham*, 4 F.3d at 415.

Because the Texas long-arm statute extends to the limits of federal due process, the court need only analyze the second factor—whether jurisdiction is consistent with constitutional due process. *Ham*, 4 F.3d at 415. Thus, the court must determine whether: (1) the defendants have established "minimum contacts" with the forum state, and (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. A determination of "minimum contacts" may be subdivided into two categories: contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). General jurisdiction is not at issue here.

To evaluate whether a defendant's minimum contacts allow the court to exercise specific jurisdiction, courts consider whether

4

the defendant "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there[.]" *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). If an act done outside the state has consequences in the state, those acts "will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009) (citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir.1999)). Similarly, if a defendant communicates with someone in the forum state and "the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

Additionally, a nonresident defendant's contacts with the forum state give rise to specific jurisdiction if they arise from or directly relate to the cause of action. *Marathon Oil Co.*, 182 F.3d at 295. "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (citing *Burger King*, 471 U.S. at 475).

### 3. Analysis
#### A. Fiduciary Shield Doctrine

As a threshold matter, the court must first address whether the fiduciary shield doctrine prevents the court from exercising jurisdiction over Manissero and Koebrick. The fiduciary shield doctrine provides that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual" even if the state has personal jurisdiction over the corporation itself. *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). The fiduciary

shield doctrine prohibits the court from ascribing the acts of a corporation to its officers, but it does not prevent an individual from being held personally liable for his own tortious conduct just because he is an officer of a corporation. *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 795 (5th Cir. 2007). Exercising personal jurisdiction over a defendant is not barred by this doctrine when a person is sued for specific acts that had reasonably foreseeable consequences within Texas. *Id.* at 795.

Manissero and Koebrick argue that "ASG's contacts . . . cannot be attributed to Koebrick and Manissero simply because they are members of ASG." ECF No. 51 at 14. But, as discussed herein, Bisley has alleged specific fraudulent acts and tortious conduct by Manissero and Koebrick in their personal capacities with reasonably foreseeable consequences in Texas. Manissero and Koebrick cannot "hide behind [their] corporate status" to evade jurisdiction for their own tortious conduct. *See Gen. Retail Servs.*, 255 F. App'x. at 795. Thus, the fiduciary shield doctrine does not prevent the court from exercising personal jurisdiction over Manissero and Koebrick.

### B. Minimum Contacts

"[S]pecific personal jurisdiction is a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth*, 472 F.3d at 274). But if "separate claims are based on the same forum contacts, a separate analysis of each claim is not required." *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 26 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 442 (W.D. Tex. 2007) (analyzing together all claims that arise from the same set of contacts and noting that the Fifth

6

Circuit did not address separate claims that arise from the same set of contacts in *Seiferth*).

Relatedly, Manissero and Koebrick argue for the first time in their reply that Bisley's allegations are deficient because they are an impermissible "shotgun or group pleading." ECF No. 69 at 2. Generally, district courts do not consider arguments that are raised for the first time in a reply if those arguments could have been raised in the initial motion. *RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr. - DTD 2/8/95*, 836 F. App'x 232 (5th Cir. 2020) (quoting *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989)). Accordingly, the court does not specifically consider this argument. In any event, Bisley's allegations are sufficient to establish jurisdiction.

Bisley's Amended Third-Party Complaint asserts fourteen causes of action against Manissero and Koebrick. ECF No. 36 (including Counts I, II, III, IV, V, VI, VII, VIII, XII, XIV, XV, XVI, XVII, and XVIII). Bisley's response grouped its claims against Manissero and Koebrick based on the specific contacts it alleges supporting each claim.[2] The court need not address each claim separately here because the claims are based on one large set of purposeful contacts. And, even if the court analyzed each claim separately, it would not affect the outcome.

Manissero and Koebrick argue that fraud claims—Counts I, II, and III—must meet the heightened Rule 9(b) standard to

---

[2] Bisley's response omits Count XII (breach of the duty of good faith and fair dealing) and misstates that Count XVII is unjust enrichment—but Count XVII is business disparagement and Count XVIII is unjust enrichment. Because these claims are based on the same contacts as several other claims, the court addresses them herein consistent with Bisley's Amended Third-Party Complaint, ECF No. 36.

survive a motion to dismiss for lack of personal jurisdiction.[3] The court disagrees. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."). Because Rule 9(b) "does not expressly authorize a motion for its enforcement, a challenge to a pleading based on insufficient particularization of the circumstances of an alleged fraud typically is asserted within a motion to dismiss (Federal Rule of Civil Procedure 12(b)(6)) or a motion to strike (Rule 12(f))." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1300 (4th ed. 2024).

Although at least one court has supported Manissero and Koebrick's position, Manissero and Koebrick have not cited any binding authority that applies Rule 9(b) in the personal jurisdiction context. *See* ECF No. 69 at 3; *Breckenridge Enterprises, Inc. v. Avio Alternatives*, LLC, No. 3:08-CV-1782-M, 2009 WL 1469808, at *7 (N.D. Tex. May 27, 2009) ("for a fraud allegation to provide the basis for the assertion of personal jurisdiction, it must satisfy the particularity requirements of Fed. R. Civ. P. 9(b)"). The Fifth Circuit has not adopted Manissero and Koebrick's position. The first Fifth Circuit case that Manissero and Koebrick cite to does not mention Rule 9 at all. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). The second Fifth Circuit case does address the Rule 9 standard, but it

---

[3] The court also notes that Manissero and Koebrick did not raise its Rule 9(b) argument in its initial motion to dismiss and only first asserted this argument in its reply brief. Nonetheless, since it pertains to the applicable legal standard, the court addresses it here.

does not mention personal jurisdiction. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–41 (5th Cir. 2008). These two cases are not instructive here.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff's burden is to *make a prima facie showing that the court has jurisdiction* over a nonresident defendant. *See Ham*, 4 F.3d at 415 (emphasis added). This is not a judgment on the merits of the pleadings, but rather an analysis of whether the court may exercise jurisdiction over the defendants. The issue is not whether the plaintiff has stated a cause of action, but whether the plaintiff has alleged facts sufficient for the court to exercise jurisdiction. These are very different issues. As such, the court will not apply the Rule 9(b) standard to this analysis.

The parties have approached this motion by dividing the claims into groups and separately analyzing jurisdiction over each group of claims. The court understands that this approach is often appropriate, but it is not necessary here. Bisley's allegations against Manissero and Koebrick are based on an ongoing series of events, all alleged to have been directed at harming Bisley, a Texas company. At all points in time, Manissero and Koebrick knew that Bisley was a Texas company. They attended at least one meeting in Texas and their actions all were specifically directed toward Bisley. The harm to Bisley was not a mere fortuitous consequence of Manissero and Koebrick's actions—it was the object. It is difficult to segregate Manissero and Koebrick's conduct into discrete categories of conduct. In the court's view, each of Manissero and Koebrick's alleged actions are intertwined with each of the alleged torts. The court concludes that Manissero and Koebrick purposefully directed their overall conduct toward Bisley, a known Texas company, such that their actions would inevitably have consequences within the state of Texas. The totality of Manissero and Koebrick's conduct establishes personal

jurisdiction for all of the causes of action alleged. However, because the parties have separately addressed the causes of action in subgroups, the court will engage in that analysis as well.

To support its fraud claims, Bisley alleges that Manissero and Koebrick engaged in many fraudulent activities as part of a larger scheme to harm Bisley. Specifically, Bisley alleges that Manissero and Koebrick engaged in tortious activity in Texas. According to Bisley, while in Houston, Texas, Manissero and Koebrick intentionally and fraudulently suggested that the operators of GTS, Bisley's Houston-based warehouse, accept an improper fee arrangement that would harm Bisley. ECF No. 36 ¶ 145–48.

Bisley also alleges that Manissero and Koebrick told the operators of GTS that "ASG paid Bisley employees 'off the books,'" which was false. ECF No. 36 ¶ 145. Each of these communications, Bisley alleges, was intended to cause injury to Bisley in Texas by seriously harming Bisley's business.

In addition to the false statements above, Bisley alleges that Manissero and Koebrick intentionally and fraudulently harmed Bisley by:

- Knowingly requesting a fake large order of sodium aluminate on behalf of Bisley's customer Riteks, "which resulted in Bisley shipping sodium aluminate and never receiving payment," ECF No. 36 ¶ 160(k);
- Manipulating the prices of products to wrongfully receive money from Bisley and "essentially drain Bisley's cash-flow," *id.* ¶ 160(j);
- Paying above the market rate for products then selling those products below market rates to receive an inflated commission from Bisley, *id.* ¶¶ 160(l), 184–86;
- Improperly compensating Bisley employees, *id.* ¶ 160(p);

- Over-ordering products to cause Bisley's warehouse to fill with products that "had no place to go," *id.* ¶ 160(o); and
- Redirecting Bisley's leads for future business to ASG, *id.* ¶ 160(e).

Even if Manissero and Koebrick were not *in* Texas when they performed such acts, they purposely directed their actions toward Texas with intent to harm Bisley, a Texas company. These are not mere fortuitous impacts in Texas. They were purposeful. *See Burger King*, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts"). Manissero and Koebrick were part of a reciprocal relationship between Bisley and ASG, and Bisley alleges that Manissero and Koebrick directed specific tortious activity toward Bisley in Texas. Manissero and Koebrick benefitted from doing business with Bisley and directed their activities toward Bisley. As such, Manissero and Koebrick have purposefully directed their actions toward the state of Texas for purposes of Bisley's fraud claims.

The same is true for Bisley's claims of theft and conversion. Bisley alleges that Manissero and Koebrick, along with other Third-Party Defendants, fraudulently requested several large orders of sodium aluminate from Bisley purportedly on behalf of a Bisley customer. ECF No. 36 ¶ 160(k). Again, if Bisley's allegation is true, Manissero and Koebrick purposefully availed themselves of the privilege of doing business in Texas by directing their tortious acts at Bisley. Bisley's theft and conversion claims meet the personal jurisdiction minimum contacts requirement.

To support its claims for Counts XII, XVII, XVIII, XV, and XVI, Bisley alleges that Manissero and Koebrick made false, harmful statements to Bisley, decreased Bisley's business by

11

steering clients away from Bisley, and falsely increased prices of products to receive inflated commissions. *See* ECF No. 36 ¶ 161. Bisley also alleges that Manissero and Koebrick helped ASG take a client from Bisley at least once using Bisley's customer information. For example, Bisley alleges that Manissero and Koebrick, with others, excluded Bisley from conversations with Sodium Solutions and negotiated a sale to Sodium Solutions by ASG, "bypassing and stealing business from Bisley." *Id.* ¶¶ 52–57. Here, as above, even if Manissero and Koebrick were not in Texas when they acted, they directed actions toward a Texas company and engaged in tortious activities that were intended to cause Bisley serious harm in Texas. Bisley's claims meet the personal jurisdiction minimum contacts requirement.

To support its claims for violations of the Texas Uniform Trade Secrets Act and the federal Defend Trade Secrets Act, Bisley alleges that Manissero and Koebrick, along with other Third-Party Defendants, "use[d] Bisley's trade secrets and proprietary information in competition with Bisley to divert and steal, among other things, Bisley's current customers and future customers via Bisley leads." ECF No. 36 ¶ 240. Bisley states that Manissero and Koebrick used or disclosed proprietary, confidential information, and trade secrets of Bisley, including Bisley's customer and supplier lists and financial data, to solicit Bisley's customers. *Id.* ¶¶ 233–41.

For example, Bisley alleged that Walmart contacted Bisley for an order, which was a confidential trade secret. ECF No. 36 ¶¶ 38–43. But a Bisley employee told ASG about Walmart's order, and Koebrick unlawfully finalized the order on behalf of ASG, not Bisley, then received a large commission. *Id.* ¶¶ 41–48.

Similarly, Bisley alleges that Manissero sold an order of welan gum to a Bisley customer on behalf of ASG in November 2022 without including Bisley. ECF No. 36 ¶¶ 60–63. Manissero

12

allegedly also told Bisley's customer how to bypass Bisley in the future. *Id.* ¶ 63 (quoting an email from Manissero stating "the easiest way would be for the PO to come to ASG directly from customer, you tell us what price to quote them once you determine what commission you want above this and we will send out formal quote and pay your commission as soon as we get paid.").

Taking Bisley's allegations as true, Manissero and Koebrick used secret information about Bisley's customers to take business from Bisley and to personally receive increased monetary compensation. Manissero and Koebrick's actions were directed toward Bisley in Texas. As such, Bisley's trade secret claims against Manissero and Koebrick survive.

Bisley also alleges that Manissero and Koebrick were part of a civil conspiracy. "[A] defendant cannot be subject to personal jurisdiction solely because he participated in an alleged conspiracy with a co-conspirator who had contacts with Texas." *Logan Intern. Inc. v. 1556311 Alberta Ltd.*, 929 F. Supp. 2d 625, 631 (S.D. Tex. 2012); *see also Guidry*, 188 F.3d at 625 (holding that a plaintiff must establish a prima facie case of specific personal jurisdiction over each defendant individually, not simply as part of a conspiracy). The court must consider whether Bisley has made a prima facie showing that Manissero and Koebrick purposely directed their actions toward Texas and whether the conspiracy claim relates to or arises out of those contacts. *See Garcia v. Peterson*, 319 F. Supp. 3d 863, 888 (S.D. Tex. 2018).

Manissero and Koebrick argue that Bisley's allegations of a conspiracy are insufficient to establish personal jurisdiction. ECF No. 51 at 12–13. Bisley argues that it has asserted "much more than a single conspiracy claim" and that the conspiracy is just one part of a larger scheme to harm Bisley's business. ECF No. 62 at 15.

13

The court has already found that Manissero and Koebrick had sufficient minimum contacts with Texas in many instances by purposely directing actions toward Bisley. Bisley's conspiracy claim arises from or relates to the contacts above. As such, Bisley has made its prima facie case for jurisdiction over Manissero and Koebrick for its conspiracy claim.

### C. Fair Play and Substantial Justice

Even if the plaintiff's claims arise out of or relate to the defendant's contacts with the forum, the exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice." *Ruston Gas Turbines, Inc.*, 9 F.3d at 418 (citing *Int'l Shoe*, 326 U.S. at 316 (1945)).

In their motion to dismiss, Manissero and Koebrick did not argue that exercising jurisdiction over them would offend traditional notions of fair play and substantial justice. *See* ECF No. 51. As such, the court need not address that issue here.

Accordingly, the court finds that it may exercise personal jurisdiction over Manissero and Koebrick.

### 4. Conclusion

For the foregoing reasons, the court recommends that Manissero and Koebrick's Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 51, be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on November 19, 2024.

_____
Peter Bray
United States Magistrate Judge