United States District Court
Southern District of Texas
**ENTERED**
November 26, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASG Chemical Holdings, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-23-4333 |
| | § | |
| Bisley International, LLC, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 45. Pending before the court is Ken Pryde's Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 86. The court recommends that the motion be **DENIED**.

### *1. Background and Procedural Posture*

This suit stems from a business relationship between ASG Chemical Holdings, LLC (ASG) and Bisley International, LLC (Bisley) that went sour. ECF No. 94 at 1. ASG filed suit against Bisley, and in response, Bisley asserted its own counterclaims against ASG and filed a third-party complaint against Ken Pryde and several others. *See* ECF Nos. 40-1, 36. Pryde now argues that the court lacks personal jurisdiction over him, and he seeks to have Bisley's claims against him dismissed under Federal Rule of Civil Procedure 12(b)(2). ECF No. 86 at 1.

It is undisputed that Pryde is domiciled in Australia, where he is a citizen. *Id.*; ECF No. 36 ¶ 5. Bisley alleges that Pryde was the Vice President of Operations for Bisley International, LLC, (Bisley) a Texas company. ECF No. 36 ¶ 5. Pryde denies being an employee of Bisley in Texas, and states that he was employed by a separate entity—Bisley & Co. Pty Ltd., an Australian company

(Bisley Australia). ECF No. 86 at 4; *see also* Pryde Decl. ¶ 2. Bisley Australia is Bisley's parent company. ECF No. 94 at 2; ECF No. 86 at 13.

Bisley alleges that, after the relationship between ASG and Bisley deteriorated, Pryde acted tortiously with other Third-Party Defendants as part of a larger conspiracy to harm Bisley. Broadly, Bisley claims that, as part of this scheme, "Pryde was a double agent acting on behalf of and/or for the benefit of ASG, himself, and their co-conspirators, while simultaneously operating as the VP of Operations at Bisley." ECF No. 36 ¶ 5. Bisley alleges that Pryde improperly executed a "Non-Compete Release" to defraud Bisley, decreased Bisley's business by steering clients away from Bisley, accepted money to falsify Bisley's internal records, shared Bisley's confidential and proprietary information to divert Bisley's exclusive suppliers, and falsely increased prices to receive inflated commissions from Bisley. *Id.* ¶¶ 159–60. The court provides more specific allegations in the analysis herein.

### 2. *Legal Standards*

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to make a prima facie showing that the court has jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). The court may rely on affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery to determine whether it can assert jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes its prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction

2

unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if: (1) the state's long-arm statute confers personal jurisdiction over that defendant, and (2) the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ham*, 4 F.3d at 415.

Because the Texas long-arm statute extends to the limits of federal due process, the court need only analyze the second factor—whether jurisdiction is consistent with constitutional due process. *Ham*, 4 F.3d at 415. Thus, the court must determine whether: (1) the defendants have established "minimum contacts" with the forum state, and (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. A determination of "minimum contacts" may be subdivided into two categories: contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). General jurisdiction is not at issue here.

To evaluate whether a defendant's minimum contacts allow the court to exercise specific jurisdiction, courts consider whether the defendant "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there[.]" *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). If an act done outside the state has

3

consequences in the state, those acts "will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009) (citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir.1999)). Similarly, if a defendant communicates with someone in the forum state and "the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

Additionally, a nonresident defendant's contacts with the forum state give rise to specific jurisdiction if they arise from or directly relate to the cause of action. *Marathon Oil Co.*, 182 F.3d at 295. "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (citing *Burger King*, 471 U.S. at 475).

### 3. Analysis

The parties have engaged in briefing about whether the court should defer any jurisdictional determination until trial. ECF No. 94 at 6–7; ECF No. 96 at 2–3. On a motion to dismiss for lack of personal jurisdiction, as stated above, uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion*, 895 F.2d at 217. Applying this standard here, the court finds that Bisley has made the required showing at this stage in the proceeding.

### A. Minimum Contacts

"[S]pecific personal jurisdiction is a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for

4

each claim.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth*, 472 F.3d at 274). But if "separate claims are based on the same forum contacts, a separate analysis of each claim is not required." *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 26 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 442 (W.D. Tex. 2007) (analyzing together all claims that arise from the same set of contacts and noting that the Fifth Circuit did not address separate claims that arise from the same set of contacts in *Seiferth*).

Bisley's Amended Third-Party Complaint asserts sixteen causes of action against Pryde. ECF No. 36 (including Counts I, II, III, IV, V, VI, VII, VIII, IX, XII, XIII, XIV, XV, XVI, XVII, and XVIII). Bisley's response grouped its claims against Pryde based on the specific contacts it alleges support each claim.[1] The court need not address each claim separately here because Bisley's allegations against Pryde are based on one series of events, all alleged to have been directed at harming Bisley, a Texas company. Pryde "served as the VP of Operations for Bisley." ECF No. 96 at 4. Even if he was not *employed by* Bisley in Texas,[2] he performed business on behalf of Bisley and took tortious actions that were specifically directed toward Bisley. The harm to Bisley was not a mere fortuitous consequence of Pryde's actions—it was the object.

It is difficult to segregate Pryde's actions into discrete categories of conduct. In the court's view, each of Pryde's alleged

---

[1] Bisley's response omits Counts XI, XIV, and XVII. Because these claims are based on the same contacts as several other claims, the court addresses them herein consistent with Bisley's Amended Third-Party Complaint, ECF No. 36.

[2] Pryde's declaration states that he was not employed by Bisley, but by its parent company, Bisley Australia. Pryde Decl. ¶ 2. Pryde argues that he "fulfilled the functions of VP of Operations for Bisley in his capacity as an employee of Bisley Australia." ECF No. 96 at 4.

actions are intertwined with each of the alleged torts. The court concludes that Pryde purposefully directed his overall conduct toward Bisley, a known Texas company, such that his actions would inevitably have consequences within the state of Texas. The totality of Pryde's conduct establishes personal jurisdiction for all of the causes of action alleged. However, because the parties have separately addressed the causes of action in sub-groups, the court will engage in that analysis as well.

To support its fraud claims, Bisley alleges that Pryde: falsified Bisley records, executed a document on behalf of Bisley that Bisley did not authorize or know of, concealed facts that caused Bisley to miss business opportunities, and caused Bisley to pay inflated rates to increase his commission. Specifically, Bisley alleges that, without Bisley's authorization or knowledge, Pryde sent a document to ASG that purported to release ASG from its obligations not to compete with Bisley (the "Non-Compete Release"). ECF No. 36 ¶ 22–25. Pryde also allegedly falsified Bisley's internal records by underreporting inventory and selling inventory "off the record" and accepted payment from ASG to do so. *Id.* ¶ 160(f). Bisley also alleges that Pryde intentionally and fraudulently harmed Bisley by:

- Facilitating requests for fake, large orders of sodium aluminate by falsifying internal Bisley records, "which resulted in Bisley shipping sodium aluminate and never receiving payment," *id.* ¶ 160(k);
- Manipulating the prices of products to wrongfully receive money from Bisley and "essentially drain Bisley's cash-flow," *id.* ¶ 160(j);
- Causing Bisley to pay above the market rate for products then selling those products below market rates to receive an inflated commission from Bisley, *id.* ¶¶ 160(l)–(m);

6

- Concealing material facts about Bisley's business, including orders and potential orders from Bisley's clients and potential clients, *id.* ¶¶ 193–95,

Even if Pryde was not *in* Texas when he performed such acts, he purposely directed his actions toward Texas with intent to harm Bisley, a Texas company. These are not mere fortuitous impacts in Texas. They were purposeful. *See Burger King*, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts"). Pryde was part of a reciprocal relationship between Bisley and ASG, and Bisley alleges that Pryde directed specific tortious activity toward Bisley in Texas. Pryde benefitted from doing business on behalf of Bisley and directed his tortious activities toward Bisley. ECF No. 36 ¶¶ 160(f), (l), (m). As such, Pryde has purposefully directed his actions toward the state of Texas for purposes of Bisley's fraud claims.

The same is true for Bisley's claims of theft, conversion, and unjust enrichment. Bisley alleges that Pryde, along with other Third-Party Defendants, fraudulently facilitated requests for several large orders of sodium aluminate from Bisley purportedly on behalf of a Bisley customer. ECF No. 36 ¶ 160(k). Pryde also allegedly altered Bisley's records and caused Bisley to pay fraudulently increased prices. Again, if Bisley's allegation is true, Pryde purposefully availed himself of the privilege of doing business in Texas by directing his tortious acts at Bisley. These claims meet the personal jurisdiction minimum contacts requirement.

To support its claims for violations of the Texas Uniform Trade Secrets Act and the federal Defend Trade Secrets Act, Bisley alleges that Pryde disclosed Bisley's trade secrets, which Pryde and ASG now use in competition with Bisley. ECF No. 36 ¶ 239–

7

240. For instance, Bisley alleged that Walmart contacted Bisley for an order, which was a confidential trade secret. *Id.* ¶¶ 38–43. Pryde told ASG about Walmart's order, worked with ASG to unlawfully finalize the order on ASG's behalf, then received a large commission. *Id.* ¶¶ 41–48.

Taking Bisley's uncontroverted allegations as true, Pryde used secret information about Bisley's customers to take business from Bisley and to personally receive increased monetary compensation. Pryde's actions were directed toward Bisley in Texas. As such, Bisley's trade secret claims survive.

Bisley also alleges that Pryde was part of a civil conspiracy. Pryde argues that Bisley's allegations of a conspiracy do not contain sufficient factual allegations to support personal jurisdiction and that a conspiracy with local defendants is not enough to establish personal jurisdiction. ECF No. 96 at 13; ECF No. 86 at 10. Bisley argues that it has asserted "much more than a single conspiracy claim" and that the conspiracy is just one part of a larger scheme to harm Bisley's business. ECF No. 94 at 15.

"[A] defendant cannot be subject to personal jurisdiction solely because he participated in an alleged conspiracy with a co-conspirator who had contacts with Texas." *Logan Intern. Inc. v. 1556311 Alberta Ltd.*, 929 F. Supp. 2d 625, 631 (S.D. Tex. 2012); *see also Guidry*, 188 F.3d at 625 (holding that a plaintiff must establish a prima facie case of specific personal jurisdiction over each defendant individually, not simply as part of a conspiracy). The court must consider whether Bisley has made a prima facie showing that Pryde purposely directed his actions toward Texas and whether the conspiracy claim relates to or arises out of those contacts. *See Garcia v. Peterson*, 319 F. Supp. 3d 863, 888 (S.D. Tex. 2018).

The court has already found that Pryde had sufficient minimum contacts with Texas in many instances by purposely

directing actions toward Bisley. Bisley's conspiracy claim arises from or relates to the contacts above. As such, Bisley has made its prima facie case for jurisdiction over Pryde for its conspiracy claim.

To support its claims for Counts IX, XII, XIII, XIV, XV, XVI, and XVII, Bisley alleges that Pryde was in a fiduciary relationship with Bisley and that he breached his duties by sharing confidential Bisley information, making false representations to Bisley, diverting Bisley's existing and future business to ASG, and making misrepresentations to Bisley that caused Bisley to pay inflated commission rates. ECF No. 36 ¶¶ 294–99, 322–23, 334, 349, 355. Pryde used his position with Bisley to manipulate Bisley's records and to cause Bisley harm. Here, as above, even if Pryde was not in Texas when he acted, he directed his actions toward a Texas company and engaged in tortious activities that were intended to cause Bisley serious harm in Texas. Bisley's claims meet the personal jurisdiction minimum contacts requirement.

Bisley has made its prima facie case for jurisdiction. Thus, the burden shifts to Pryde to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

### B. Fair Play and Substantial Justice

Even if the plaintiff's claims arise out of or relate to the defendant's contacts with the forum, the exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice." *Ruston Gas Turbines, Inc.*, 9 F.3d at 418 (citing *Int'l Shoe*, 326 U.S. at 316 (1945)). "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Wien Air Alaska*, 195 F.3d at 215. The court considers five factors in this analysis: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared

9

interest of the several states in furthering fundamental social policies." *McFadin*, 587 F.3d at 760 (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006)).

Modern technology has made it much less burdensome for a defendant to litigate in a state where he does not live or where he has engaged in economic activity. *See Burger King*, 471 U.S. at 474. Indeed, after a defendant engages in economic activity in a forum, exercising jurisdiction over that defendant in that forum is usually not unfair. *Id.* Also, a state generally has "a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id.* at 473. "Moreover, where individuals 'purposefully derive benefit' from their interstate activities, . . . it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities[.]" *Id.* at 473–74.

Pryde argues that "it would be unreasonable to require Pryde to defend this suit in Texas" because: he lives in Australia, he did not conduct activities in Texas, and Bisley's allegations are "vague and conclusory." ECF No. 96 at 15–16. Pryde's argument fails.

Even though he was physically "halfway around the world," ECF No. 96 at 3, Pryde conducted business on behalf of a Texas company and allegedly committed torts against that company in the course of his business. (1) Pryde has not shown that it would be an unreasonable or unfair burden for him to litigate in Texas. In fact, he admits that he served as the Vice President of a Texas Company from Australia. He has not shown why he would be unable to litigate from there as well. Pryde targeted Bisley and allowing him to evade the court's jurisdiction in Texas would be unfair. (2) Texas has an interest in ensuring that Bisley, a Texas company, can recover for its injuries that it suffered here. (3) Bisley has an interest in litigating its claims against Pryde as part

of *this* suit—that is, a suit wherein many other related claims will be litigated. Pryde has not argued that any other factor would weigh in his favor nor has he provided any legal support for his argument that exercising jurisdiction over him would be unfair.

Pryde has not presented a compelling case that exercising jurisdiction over him would be unreasonable. Accordingly, the court finds that it may exercise personal jurisdiction over Pryde.

### *4. Conclusion*

For the foregoing reasons, the court recommends that Pryde's Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 86, be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on ___Nov. 25___, 2024.

_____
Peter Bray
United States Magistrate Judge